FILED
2021 Jan-14 PM 01:51
U.S. DISTRICT COURT
N.D. OF ALABAMA



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| PART TWO LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   7:20-cv-01047-LSC |
| | ) |
| OWNERS INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

---

**Memorandum of Opinion**

---

Part Two LLC ("Part Two") sued its insurer, Owners Insurance Company ("Owners"), for breach of contract and bad faith. (Doc. 5-1.) Owners' motion to dismiss, filed under Rule 12(b)(6) of the Federal Rules of Civil Procedure, is now before the Court. (Doc. 4.) The parties fully briefed the motion.[1] (Docs. 4, 17, 18, 19,

---

[1] In a prior Memorandum of Opinion, *see* Doc. 14, the Court explained how and why federal subject matter jurisdiction exists in this case. Part Two and Owners are completely diverse, and precedent, judicial experience, and common sense all show Part Two's breach of contract claim, taken alongside its bad faith claim, places more than $75,000 in controversy. *Roe v. Michelin North Am., Inc.*, 613 F.3d 1058, 1062 (11th Cir. 2010) (in estimating the amount in controversy, district courts make "reasonable deductions, reasonable inferences," and use "their judicial experience and common sense").

20.) After careful consideration of the briefs and cited authority, the Court will apply the unambiguous virus exclusion in Part Two's insurance policy and dismiss this case with prejudice.

## I. Standard of Review

A non-movant survives a 12(b)(6) motion by stating "a claim to relief that is plausible on its face." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1347–48 (11th Cir. 2016). Gauging plausibility is a two-step process. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court begins "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Then the Court "assume[s] [the] veracity" of all well-pleaded factual allegations. *Id.* Unless those factual allegations raise the non-movant's right to relief "above the speculative level," the 12(b)(6) motion is due to be granted. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Accepting Part Two's factual allegations as true and drawing all reasonable inferences in Part Two's favor, *see Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999), the facts are as follows:

## II. Facts

Part Two owns and operates a retail store in Tuscaloosa, Alabama. (Doc. 5-1 at ¶ 33.) "As a result of COVID-19 and mandatory government orders," Part Two

closed its doors for several weeks in the spring of 2019. (*Id.* at ¶ 34.) The closure cost Part Two about $30,000 in lost revenue. (Doc. 13 at ¶ 2.)

Owners provided Part Two with property coverage and business interruption coverage from October 28, 2019, through October 28, 2020.[2] (Doc. 5-1 at ¶ 33.) That coverage promises the following:

> **We [Owners] will pay for direct physical loss of or damage to Covered Property . . . caused by or resulting from any Covered Cause of Loss.**
>
> **. . .**
>
> **We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by direct physical loss of or damage to [covered property]. . . . The loss**

---

[2]  When a Court rules on a 12(b)(6) motion to dismiss, it generally is "limited to reviewing what is within the four corners of the [plaintiff's] complaint." *Brickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir. 2006). If a Court looks beyond the plaintiff's complaint, usually it "must convert the motion to dismiss into one for summary judgment." *Property Mgmt. & Invs., Inc. v. Lewis*, 752 F.2d 599, 604 (11th Cir. 1985). An exception exists "where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim." *Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citing *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). When that happens, "the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment." *Id*.

Here the Court considers Part Two's insurance policy—even though that policy lies outside the four corners of Part Two's complaint. Part Two's complaint refers to the policy multiple times, neither party questions the policy's authenticity, and the policy is central to both of Part Two's causes of action. The Court therefore considers it without converting Owners' 12(b)(6) motion into a motion for summary judgment. *See Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284–85 (11th Cir. 2007) (considering an insurance policy attached to a motion to dismiss "because it is referred to in the complaint, it is central to [the plaintiff's] claim, . . . and neither party challenges its authenticity").

> or damage must be caused by or result from a Covered Cause of Loss.

(Doc. 4-1 at 65, 79.) The insurance policy also includes extra expense coverage and civil authority coverage. Those provisions state, in relevant part:

> **We will pay Extra Expense[3] (other than the expense to repair or replace property) to:**
>
> **(1) Avoid or minimize the "suspension" of business and to continue operations at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.**
>
> **(2) Minimize the "suspension" of business if you cannot continue "operations."**
>
> . . .
>
> **When a Covered Cause of Loss causes damage to property other than property at the described premises, we [Owners] will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:**
>
> **(1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and**
>
> **(2) The action of civil authority is taken in response to dangerous physical conditions resulting from the**

---

[3] The policy defines "Extra Expense" as "necessary expenses you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss." (Doc. 4-1 at 79.)

> **damage or continuation of the Covered Cause of Loss that caused the damage . . .**

(*Id.* at 79–80.) These promises are all subject to a series of exclusions. (*Id.* at 88–96.) The most relevant exclusion—styled "Virus Or Bacteria"—excludes all "loss or damage caused by or resulting from virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." (*Id.* at 89.) This exclusion applies to any loss caused "directly or indirectly" by virus. (*Id.* at 88.)

Unphased by the "Virus or Bacteria" exclusion in its contract, Part Two filed a business interruption claim for revenues lost due to COVID-19 and COVID-19 shutdown orders. (Doc. 5-1 at ¶¶ 34–35.) Owners denied that claim on April 3, 2020. (*Id.* at ¶ 36.) That denial is the basis for both of Part Two's causes of action.

### III. Analysis

In diversity cases—like this one—this Court applies the substantive law of the forum state. *McMahan v. Toto*, 256 F.3d 1120, 1132 (11th Cir. 2001) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). The forum state here is Alabama: Part Two filed this case in Tuscaloosa County Circuit Court, and Owners removed it to the United States District Court for the Northern District of Alabama. Because neither party disputes that contract interpretation is substantive or otherwise argues that Alabama law does not control, the Court will apply Alabama law.

### A. Part Two Has Not Stated A Plausible Breach of Contract Claim Because an Unambiguous Exclusion Denies Coverage for Its Alleged Losses.

The Alabama Supreme Court has not yet decided how a "Virus Or Bacteria" exclusion applies to COVID-19-related losses. With no controlling authority or on-point case, the Court "must anticipate" how Alabama's Supreme Court would decide the issues now before the Court. *State Farm Mut. Auto. Ins. Co. v. Duckworth*, 648 F.3d 1216, 1224 (11th Cir. 2011).

Although Alabama's Supreme Court has not answered this specific question, general principles of Alabama insurance and contract law supply all that is necessary. *See id.* (the process for deciding how a state court would rule on an unanswered question "is not exact; often we must draw our decision from comparisons to analogous cases."). Under Alabama law, a "court must enforce [an] insurance policy as written if [its] terms are unambiguous." *Safeway Ins. Co. of Ala., Inc. v. Herrera*, 912 So. 2d 1140, 1143 (Ala. 2005). This rule applies both to grants of coverage and to exclusions. *Hooper v. Allstate Ins. Co.*, 571 So. 2d 1001, 1002 (Ala. 1990). For both, "a court gives words . . . their common, everyday meaning and interprets them as a reasonable person in the insured's position would have understood them." *Traveler's Cas. and Sur. Co. v. Ala. Gas Corp.*, 117 So. 3d 695, 699 (Ala. 2012)

(quoting *State Farm Mut. Auto. Ins. Co. v. Brown*, 26 So. 3d 1167, 1169-70 (Ala. 2009)).

The virus exclusion in Part Two's policy is unambiguous. It excludes any "loss or damage caused by or resulting from a virus, bacterium, or other microorganism that induces or is capable of inducing . . . illness or disease." (Doc. 4-1 at 89.) This exclusion applies to any "loss or damage caused <u>directly or indirectly</u>" by virus, "regardless of any other cause or event that contributes concurrently or in any sequence to the loss." (*Id.* at 88) (emphasis added). It applies to business interruption coverage, to extra expense coverage, and to civil authority coverage. (*Id.* at 79–80, 88.) Read together, the exclusion's "common, everyday meaning" is clear. The Court sees no ambiguity.

The only remaining question is whether a virus lies within the causal chain of Part Two's alleged loss. To ask the question is to answer it. *See generally Travis v. Cent. Sur. & Ins. Corp.*, 117 F.2d 595, 596 (5th Cir. 1941) ("To ask these questions is to answer them."). Of course a virus directly or indirectly caused COVID-19-related damage and COVID-19-related orders. By causing that damage and by causing those orders, a virus caused Part Two's alleged harm—lost income "as a result of COVID-19 and mandatory government orders." This unambiguously places Part Two's alleged loss outside the policy and outside Owners' contracted-for risk. Many federal

courts have reached the same conclusion when applying similar or synonymous virus exclusions. *See, e.g.*, *Newchops Rest. Comcast LLC v. Admiral Indem. Co.*, No. 20-1948, 2020 WL 7395153, at *8 (E.D. Pa. Dec. 17, 2020) ("Even if the insureds had suffered covered losses under either or both the civil authority and business income provisions, the virus exclusion precludes coverage."); *N&S Rest LLC v. Cumberland Mut. Fire Ins. Co.*, No. 2:20-05289, 2020 WL 6501722, at *5 (D. N.J. Nov. 5, 2020) ("Accordingly, based on the Court's independent evaluation of the Policy's Virus Exclusion and the wealth of well-reasoned opinions from other districts holding similarly, the Court finds that the Virus Exclusion bars coverage."); *Mauricio Martinez, DMD, P.A. v. Allied Ins. Co. of Am.*, No. 2:20-cv-00401-FtM-66NPM, 2020 WL 5240218, at *2 (M.D. Fla. Sep. 2, 2020) ("Because Martinez's damages resulted from COVID-19, which is clearly a virus, neither the Governor's executive order . . . nor the disinfection of the dental office of the virus is a 'Covered Cause of Loss' under the plain language of the policy exclusion.").

Part Two responds to Owners' virus-exclusion argument two ways. First, Part Two says the Court should not apply the exclusion "at this point in the life of the case." (Doc. 17 at 11.) Instead the Court should wait until summary judgment to decide whether the exclusion is ambiguous and how it applies. Second, Part Two

points to the virus exclusion's "origin and evolution" to argue the exclusion does not reach COVID-19-caused losses. (*Id.* at 9.)

Neither of Part Two's arguments persuade the Court. To the first argument: whether an exclusion is ambiguous or unambiguous is a question of law. *See Twin City Fire Ins. Co. v. Ohio Cas. Ins. Co.*, 480 F.3d 1254, 1258 (11th Cir. 2007) ("In Alabama, the interpretation of a contract . . . is a question of law, reviewed *de novo*."); *Upton v. Miss. Valley Title Ins. Co.*, 469 So. 2d 548, 553 (Ala. 1985). The Court may answer that question and apply an unambiguous exclusion without discovery or factual development. *Cf. Robinson v. Liberty Mut. Ins. Co.*, 958 F.3d 1137 (11th Cir. 2020) (applying Alabama law to an exclusion within an insurance contract, finding no ambiguity, and granting the insurer's motion to dismiss). Part Two's second argument also falls short. The policy unambiguously excludes virus-caused losses, and neither the origin nor the evolution of the exclusion can create ambiguity where none exists. *See Lambert v. Coregis Ins. Co., Inc.*, 950 So. 2d 1156 (Ala. 2006) (quoting *Herrera*, 912 So. 2d at 1143) ("[T]he parties cannot create ambiguities by setting forth different interpretations or by inserting strained or twisted reasoning."). Because Part Two's policy does not cover any loss caused directly or indirectly by a virus, and because Part Two alleges only virus-caused losses, its breach of contract claim is due to be dismissed.

### B. With No Plausible Breach of Contract Claim, Part Two's Bad Faith Claim Fails as a Matter of Law.

Breach of contract and bad faith are joined at the hip. *See Acceptance Ins. v. Brown*, 832 So. 2d 1, 16 (Ala. 2001). "[C]ontractual liability is a prerequisite for liability for bad faith. Therefore, one who cannot prove she was entitled to benefits under an insurance policy cannot recover on a bad-faith claim." *Id.* Having failed to state a plausible breach of contract claim, Part Two's bad faith claim likewise fails. *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 318 (Ala. 1999) ("We think it clear that these authorities limit bad faith liability to those cases in which the insured is entitled to benefits under the policy.").

### C. Both of Part Two's Claims Are Due to Be Dismissed with Prejudice.

In its response brief, Part Two "requests the opportunity to amend" its complaint and avoid a dismissal with prejudice. (Doc. 17 at 11.) The Court will not grant Part Two's request because any amendment would be futile. For Part Two to prevail, the Court would have to blind itself to the virus exclusion and judicially rewrite Part Two's insurance policy. *See St. Paul Fire & Marine Ins. Co. v. Britt*, 203 So. 3d 804, 811 (Ala. 2016). ("A court must not rewrite a policy so as to include or exclude coverage that was not intended."). Rather than allow a futile amendment,

the Court will dismiss this case with prejudice. *See Mann v. Palmer*, 713 F.3d 1306, 1316 (11th Cir. 2013).

### IV. Conclusion

The Court will enter an Order consistent with this Memorandum of Opinion.